JODI LINKER, Bar No. 230273
Federal Public Defender
Northern District of California
KAITLYN R. FRYZEK, Bar No. 340229
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone: (510) 637-3500
Facsimile: (510) 637-3507
Email: Kaitlyn_Fryzek@fd.org

Counsel for Defendant Robinson

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ANTHONY ROBINSON,<br>Defendant. | **Case No.:** CR 26–500 AMO<br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF RELEASE**<br>**Hearing Date:** October 16, 2026<br>**Hearing Time:** 10:30 a.m. |

Anthony Robinson is a lifelong Bay Area resident, a homeowner, a successful professional recently employed in the technology industry, and a devoted father. This matter is his first federal criminal case, and his first contact with the criminal legal system in close to twenty years. Notably, Mr. Robinson's three prior felony convictions – from 2002, 2005, and 2007– have all been either expunged in the state court system or are convictions for which he applied for and received Certificates of Rehabilitation. He has a stable home to which he can return, and with location and electronic device monitoring conditions, Mr. Robinson can be safely released on pretrial supervision pending the outcome of this case. He is a prime candidate for release, and, under the Bail Reform Act (BRA), this Court should release him.

Mr. Robinson was arrested in August 2026 after a search warrant was executed for his

residence. Acting on two Cybertips, one from 2022 and one from 2025 regarding alleged CSAM, agents searched the Robinson home, where they took possession of electronic devices and external drives. Agents also located two small mantle-style firearms safes[1] and a larger firearms safe in the rear of a closet containing what appear to be a total of four completed or functional firearms, along with firearm lowers, accessories, and ammunition. On August 26, 2026, Mr. Robinson was arrested and charged by way of complaint with one count of 18 U.S.C. § 922(g)(1), being a felon in possession of a firearm and ammunition. He was indicted on October 1, 2026, again on one count of 18 U.S.C. § 922(g)(1), arraigned on the indictment on October 9, 2026, and requested that a bail hearing be set on October 16, 2026.

[redacted]

The government attempts to paint Mr. Robinson as a "sexual predator," a serious characterization that should be made only on the strongest of evidence. As discussed below, the allegations pertaining to [redacted] have already been explored and investigated [redacted] Any presumption of detention is sufficiently rebutted by this evidence, and the government fails to show that Mr.

---

[1] A firearm safe that appears to be a shelf or fireplace mantle.

[2] [redacted].

Robinson is a danger such that ***no*** combination of conditions could reasonably assure the safety of the community.

The government details for the first time in its Motion for Detention the contents of what it purports to have discovered on external hard drives recovered from the Robinson residence. As of the writing of this memorandum, no reports or other documentation concerning the alleged contents of Mr. Robinson's external devices have been made available to defense counsel, and review of Mr. Robinson's laptop appears to be ongoing. Even with allegations that Mr. Robinson possessed CSAM, this Court can and should release Mr. Robinson, as it has done before for many individuals who are actually charged with possession or receipt of such materials. Contrary to the government's representations, there are conditions that can reasonably assure the protection of the community and mitigate concerns of danger.

**I. The government's burden of proof is clear and convincing evidence.**

Criminal defendants are ordinarily entitled to release before trial. *See United States v. Motamedi,* 767 F.2d 1403, 1405 (9th Cir. 1985). "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act ("BRA") statute states that a judge "shall order the pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court." 18 U.S.C. § 3142(b). Where the judge finds release on either of the two conditions above "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," *still* the "judicial officer *shall* order the pretrial release of the person . . . subject to the least restrictive further condition, or combination of conditions." 18 U.S.C. § 3142(c)(1), (c)(1)(B). Only in "rare circumstances" may a court order a defendant detained pending trial. *Motamedi,* 767 F.2d at 1405. Pretrial release "should be denied only for the strongest of reasons." *Id.* at 1407 (citation omitted).

Being a felon in possession of a firearm pursuant to Section 922(g)(1), the crime with which Mr. Robinson is charged in the Indictment, "is not a crime of violence that triggers a presumption of danger to the community or flight risk." *U.S. v. Hasan*, 2009 WL 4251644, at *2 (N.D. Cal. Nov. 24, 2009); *U.S. v. Twine*, 344 F.3d 987, 988 (9th Cir. 2003). The government, however, argues that

because of their uncharged allegations concerning receipt of CSAM, probable cause exists for this Court to apply the rebuttable presumption of detention under 18 U.S.C. § 3142(e)(3)(E). The defense submits that a rebuttable presumption of detention should not be applied in Mr. Robinson's case because he has not been *indicted* on any charges for which the rebuttable presumption would apply. *See, e.g., U.S. v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985) ("We agree with Magistrate Grubin that the rebuttable presumption did not apply because the government had not yet charged defendant with the offense"); *contra U.S. v. Bess*, 678 F.Supp. 929 (D.D.C. 1988). Typically, the indictment itself serves to establish probable cause of the charged conduct. *See, e.g., United States v. Cook,* 2026 U.S. Dist. LEXIS 150935, *3 (C.D. Cal 2026). ("While the Ninth Circuit is silent on this issue, several courts have held that the indictment itself establishes probable cause for purposes of Section 3142(e)(3) [internal citations omitted]"). Where, as in here, Mr. Robinson is not charged with any qualifying offense in the Indictment, this Court should simply analyze whether the government has established that Mr. Robinson presents a danger by clear and convincing evidence.

Even if this Court were to apply the rebuttable presumption of detention under Section 3142(e)(3)(E), the defendant need only present *some* credible evidence showing that he is not a danger to the community – in other words, the defendant has the burden of production only – but the burden of persuasion continues to rest with the government. *U.S. v. Jessup*, 757 F.2d 378 (1st Cir. 1985); *U.S. v. Chimurenga*, 760 F.2d 400 (2d Cir. 1985); *U.S. v. Perry*, 788 F.2d 100 (3d Cir. 1986); *U.S. v. Fortna*, 769 F.2d 243 (5th Cir. 1985); *U.S. v. Freitas*, 602 F. Supp. 1283 (N.D. Cal. 1985); *U.S. v. Moore*, 607 F. Supp. 489 (N.D. Cal. 1985). The standard of proof remains clear and convincing evidence of danger. Here, the defense presents substantial information to rebut any presumption, and the government does not meet its burden by clear and convincing evidence that *no* combination of conditions could reasonably mitigate any potential danger to the community.

**II. The government cannot meet its burden of establishing by clear and convincing evidence that Mr. Robinson presents a danger such that no conditions could be set to assure the safety of the community.**

In order for the government to show that Mr. Robinson presents a danger to the community by clear and convincing evidence, the government must also demonstrate that Mr. Robinson *actually* poses a danger, not that he poses a danger in theory. *See Patriarca*, 948 F.2d at 792; *United States v.*

*Marquez*, 2018 WL 4773152, at *3 (N.D. Cal. Oct. 3, 2018) (finding that a gun sale defendant no longer posed a danger because the guns were seized); *Miller*, 2018 WL 6977619, at *8 (holding that once a drug dealer was arrested, other drug dealers avoided her).

**A. The firearms and firearm parts in the home do not establish that Mr. Robinson presents a danger to the community.**

The government argues that Mr. Robinson's alleged possession of firearms and ammunition presents a danger to the community because he was amassing what it characterizes as an "arsenal" of weapons. First, the amount and type of firearms and ammunition found in Mr. Robinson's home, stored in locked safes, are entirely consistent with a firearms hobbyist and person concerned with self-defense, and not indicative of a person who poses an inherent danger to the community. Second, there is notable confusion around whether Mr. Robinson's efforts to clear his record of his prior felony convictions might have led him to believe that he had restored his firearm rights under California and/or federal law.

The amount and type of firearms found in the Robinson home does not constitute an "arsenal." It appears from photos produced in discovery and the Government's Motion for Detention (Dkt. 20), that only four complete and functional firearms were located in the Robinson residence. The location where the firearms and accessories were found is important. Agents located two mantle-style safes in the living room of Mr. Robinson's home, each containing one Glock-style pistol. These firearms were not lying out in the open or easily accessible to the average person and are typical home-defense style weapons inside of typical home-defense-style storage media with a locking mechanism. The additional firearms and parts were in a locked, larger firearms safe located in the back of a bedroom closet. Agents were unable to open the safe without obtaining the passcode, indicating that these firearms were secured from public access, properly stored, and not lying around endangering occupants of the home. The larger safe in the closet appears to have contained only two functional firearms; a number of remaining parts appear to be firearm lowers, which are not functional on their own, and for many of them, it is not clear they are even "firearms" as defined under federal law (requiring them to be 85% completed).[3] Nowhere does the government indicate that any uppers were

[3] The photo in the Government's Motion for Detention on page 8 depicts the contents of the firearms-

found in the Robinson residence allowing these incomplete lowers to be assembled into functional firearms. And items like body armor or a bullet-proof vest are also not evidence that a person is planning any sort of violence; many legal firearms owners possess these, in the event that they feel they need them for self-protection in the future.

Importantly, there is no indication that Mr. Robinson carried or even used the firearms located in the Robinson residence. In other words, Mr. Robinson was not arrested after carrying a firearm in public or in any way brandishing a firearm; he was not arrested selling drugs with a firearm on a street corner, for example; and there are no allegations that he was involved in any dangerous conduct involving firearms. There is also no evidence of any intention by Mr. Robinson to use the firearms; the government has not produced any evidence that he regularly carried these devices or made any plans to use them. They were simply stored, safely, in his home.

Further, Mr. Robinson does not have a "lengthy" criminal history. He has misdemeanor convictions that are now over 25 years old. Mr. Robinson also suffered three prior felony convictions in the early 2000s, now around twenty years ago. And about ten years ago, Mr. Robinson underwent various efforts to clear his record of his felony convictions, with the following results:

- 2002 Conviction in Contra Costa County for Vehicle Theft (felony)
  - Certificate of Rehabilitation granted on 10/16/2015.[4]
- 2005 Conviction in Alameda County for Grand Theft (felony)
  - Expunged and reduced to a misdemeanor on 3/25/2016.
- 2007 Conviction in Contra Costa County for Felon in Possession (felony)
  - Certificate of Rehabilitation granted on 10/16/2015.

Mr. Robinson underwent serious efforts to clear his criminal record of his prior felony convictions. The government emphasizes in its Motion for Detention, *see* Dkt. 18 at p. 9, ¶¶ 26-27, that these efforts did not legally restore Mr. Robinson's right to possess a firearm. Yet it is entirely believable that the average person, not trained in legal analysis or the law, would have confusion

---

related items seized from the Robinson residence; the photo shows many of these incomplete lowers, which may not even be "firearms" as defined under federal law.

[4] This information is reflected on Mr. Robinson's RAP sheet produced to the defense in discovery and in court records.

about the state of his firearm rights after undergoing these types of efforts to clear his record of felony convictions. Regardless of whether Mr. Robinson actually was a prohibited person at the time of the alleged possession in the instant federal case, it is certainly a complicated legal question. Indeed, in various states in the country, someone in Mr. Robinson's position *could* have legally possessed firearms after the equivalent efforts to clear his record. Knowledge that a person has a prior felony conviction at the time of possession is an element of proving a violation of Section 922(g)(1); the fact that this element might legitimately be in dispute undermines the government's implied argument that he was a dangerous felon amassing an arsenal of weapons purely to cause danger to the community.

**B. The allegations concerning [redacted] are not new and have been extensively explored [redacted]**

[redacted]

[redacted]

---

[redacted]

[redacted]

---

[redacted]

[redacted]

[redacted]

The government articulates various theories for why it believes Mr. Robinson presents a danger to the community such that he should be detained pretrial and relies on alarmist allegations to attempt to paint him as a "sexual predator." Mr. Robinson has provided sufficient information to rebut any presumption of detention that might apply in this case. And even if the Court finds that Mr. Robinson does present *some* risk of danger, there *are* release conditions in this case that would reasonably assure the safety of the community. Mr. Robinson should be released pending trial.

**C. Mr. Robinson proposes strict release conditions that will mitigate any risk to the community.**

Strict release conditions can reasonably assure the safety of the community upon Mr. Robinson's release. Mr. Robinson proposes to return to the home that he owns in the Northern District of California where he would be subject to location monitoring such that this Court can be assured of his whereabouts. To assuage the Court of any concerns regarding his online activities, he proposes that the Court subject him to monitoring of his electronic devices, with any electronic devices to be approved in advance by Pretrial Services. [redacted]

A court may only detain a defendant where "the [g]overnment shows by clear and convincing

evidence that ***no*** release condition will reasonably assure the safety of the community." *United States v. Parodi*, 2008 WL 683421, at *2 (N.D. Cal. Mar. 7, 2008) (emphasis added). Specifically, "detention may be ordered where the court finds ***no condition or combination of conditions*** could prevent the defendant's continued or future criminal activity." *Id.* (citing *Salerno*, 481 U.S. at 739) (emphasis added). Here, Mr. Robinson proposes a set of strict conditions of release that could reasonably assure the safety of the community. Mr. Robinson's strict proposed release conditions are more than sufficient to reasonably ensure the safety of the community. *See, e.g., United States v. Cross*, 389 F. Supp. 3d 140, 142 (D. Mass. 2019) (finding that very strict conditions, including constant supervision by a third-party custodian and home detention with location monitoring, reasonably ensured community safety even though the "charges against the defendant [were] horrendous in nature"); *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991) (finding that a set of "innovative and extensive" conditions of release, amounting to "pre-trial house arrest," were sufficient to mitigate danger to the community in a Mafia RICO case).

## CONCLUSION

Release to his residence on location monitoring with additional monitoring of his electronic devices is a safe and structured release plan for Mr. Robinson. The defense respectfully requests that the Court grant Mr. Robinson's release in accordance with the BRA.

Dated: October 15, 2026

Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

/S

KAITLYN R. FRYZEK
Assistant Federal Public Defender